UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

CHARLES FORTE )
) No. 1:03-cv-399/1:00-cr-164
v. ) Judge Edgar
) Magistrate Judge Lee
UNITED STATES OF AMERICA )

REPORT AND RECOMMENDATION

This matter is before the Court on the Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 filed by Charles Forte ("Forte") (Court File No. 1). Forte argues he had ineffective assistance of counsel at sentencing because his counsel "failed to object to the Probation Officer's identity of 18 ounces of cocaine hydrochloride as cocaine base ("crack"), and failed to investigate, interview, and subpoena the only relevant occurrence witness (Anthony Moore) who counsel knew could support Forte's claim that the controlled substance was cocaine hydrochloride, prejudicing the outcome of the sentencing proceeding." (Reply in Opposition to Government's Response, Court File No. 9, at 4). The Government opposes the § 2255 motion (Court File Nos. 8, 16). Forte's § 2255 motion was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) (Court File No. 14). After reviewing the record and the applicable law, I conclude Forte's request for an evidentiary hearing should be **DENIED** as Forte's claim of ineffective assistance of counsel at sentencing is without merit, and I **RECOMMEND** that Forte's § 2255 motion be **DENIED AND DISMISSED WITH PREJUDICE** for the reasons set forth herein, which conclusively establish that Forte is not entitled to relief under § 2255.

I.      *Standard of Review*

A federal prisoner may challenge a sentence if it "was imposed in violation of the Constitution or laws of the United States . . . or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255. "In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003), *cert. denied*, 540 U.S. 1133 (2004) (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)). Ineffective assistance of counsel is judged under the two-part *Strickland* test, which requires showing performance of counsel that falls below an objective standard of reasonableness according to prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The movant also must show prejudice, meaning a reasonable probability that the outcome would have been different absent the deficient performance. *Id.* at 694. Judicial review of an attorney's performance is very deferential: a reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered trial strategy." *Id.* at 689 (internal quotation omitted). A lawyer's strategic decisions are virtually unassailable on appeal. *Campbell v. Coyle,* 260 F.3d 531, 556 (6th Cir. 2001) (quoting *Strickland*, 466 U.S. at 690). Finally, a defendant is entitled to competent representation, but not a perfect defense. *United States v. Natanel*, 938 F.2d 302, 309-10 (1st Cir. 1991).

## II. *Factual Background*

The facts relevant to this motion are taken, in large part, from the Presentence Investigation Report ("PSR") and the decision rendered by the United States Court of Appeals for the Sixth Circuit following Forte's direct appeal. *United States v. Forte*, No. 01-5828, 2002 WL 1869438 (6th Cir. Aug. 13, 2002). As set forth by the court of appeals, Forte previously had been convicted in 1994 of a drug offense and he was released from confinement in 2000. After his release, a law enforcement official received information that Forte was once again engaged in illegal drug trafficking and the officer confronted Forte with this accusation. Forte admitted to having received a small amount of cocaine, although not to having trafficked in cocaine. The officer released Forte after admonishing him to refrain from further drug dealing and did not report Forte's behavior to his probation officer.

A known associate of Forte's, Anthony Moore ("Moore"), was arrested on drug charges later that year and he informed officers that he had been supplying cocaine to Forte. Moore cooperated with police in making audio tape recordings of conversations with Forte that confirmed Forte's involvement in cocaine trafficking and contained details of proposed cocaine transactions. Law enforcement agents subsequently participated in a controlled cocaine transaction involving Forte and Moore. Officers arrested Forte at the successful execution of the controlled buy of one kilogram of cocaine and, shortly thereafter, a drug detection dog alerted on Forte's automobile. The officers then impounded the vehicle, obtained a search warrant, and discovered 270 grams of cocaine and cocaine base. As a result, Forte was charged in a three-count indictment with possession of cocaine for distribution.

Forte entered a guilty plea to one count of the indictment following his unsuccessful motion to suppress. The district court accepted the plea and found Forte guilty of possession with intent to distribute cocaine base ("crack") in violation of 21 U.S.C. § 841(a)(1). At the sentencing hearing, Forte objected to the guideline range of 235-293 months imprisonment. Specifically, David R. Barrow ("Barrow"), counsel for Forte, argued that Forte's criminal history score placed him in Category Five rather than Category Six under the Sentencing Guidelines. The district court entertained testimony on the disputed issue and ruled in Forte's favor. Counsel for the government declined to make a § 5K1.1 motion when prompted by Barrow, and the district court proceeded to calculate Forte's sentencing range. The resultant guideline sentencing range was 168-210 months imprisonment (base offense level thirty-one, criminal history category five) and the district court sentenced Forte at the 189 month midpoint of the range. The district court also revoked Forte's supervised release and added a 30 month term to his punishment for this violation. Barrow filed an appeal and sought to withdraw. Finding no grounds raised or apparent to disturb the decision on review, the court of appeals granted Barrow's motion to withdraw and affirmed the judgment of the district court. *Id.*

In his § 2255 motion, Forte's sole challenge relates to the inclusion of 18 ounces of crack listed in the PSR as relevant conduct. Specifically, Forte alleges his counsel was ineffective for failing to follow Forte's alleged instructions to interview Moore and then challenge the inclusion of 18 ounces of crack in the PSR claiming that the 18 ounces of cocaine was in powder form, not crack form.

The PSR contains the following relevant information about the type of cocaine at issue:

4

### The Offense Conduct

10. Information concerning Mr. Forte's offense was obtained from Mr. Forte, ATF Special Agent (SA) Malone, Assistant U.S. Attorney Gregg L. Sullivan, and the U.S. Probation Office. . . .

\* \* \*

12. On August 19, 2000, <u>Anthony Eugene Moore</u> was arrested by federal authorities and charged with two counts of Conspiracy with Intent to Possess and Distribute more than 500 Grams of Cocaine Hydrochloride and Marijuana. On August 25, 2000, he was released on a $20,000 own recognizance bond under the supervision of U.S. Pretrial Services. At that time, Mr. Moore began cooperating with the government and working for them as a confidential informant.

13. According to Mr. Moore, following his arrest in August 2000, he called **Mr. Forte** from jail and advised him that he left approximately **18 ounces of crack cocaine** in a hotel room and requested that he recover it from the hotel. Mr. Moore asserts that Mr. Forte picked up the crack cocaine from the hotel and sold it, but did not pay him his share of the money. Apparently, this made Mr. Moore angry and he subsequently agreed to "turn over" Mr. Forte to the government by engaging in "recorded conversations with Forte in which they discussed introducing Forte to Moore's California source for cocaine." Mr. Forte has admitted that he picked up approximately 18 ounces of cocaine from the hotel room, but he stated that the cocaine was in powder form and had not been cooked into crack. In a taped conversation recorded on October 16, 2000, Mr. Moore and Mr. Forte can be heard discussing the cocaine in question. As they discuss how much money was made, Mr. Forte can be heard saying that he made "10-5" ($10,500) off "13" ounces and another "45" ($4,500) for "5" ounces. Mr. Forte then states "...and then them little powder things." Mr. Moore then states "I said don't worry about that!" Mr. Moore is prepared to testify that the cocaine in question was, in fact, crack cocaine, and the government asserts that in this conversation Mr. Forte distinguishes the 18 ounces as crack by referring to the additional, separate, smaller amounts of illegal drugs as "them little powder things.". . .

\* \* \*

DRUG AMOUNTS

17. The following drug amounts were derived based on information received from Mr. Forte, SA Malone, AUSA Sullivan, and the tape recorded conversations of Mr. Moore and Mr. Forte. **None of the drug <u>amounts</u> are in question and are being considered as relevant conduct pursuant to U.S.S.G. § 1B1.3.(a)(1)(A) and (B).** *<u>However, Mr. Forte disputes Mr. Moore's assertion that the 18 ounces of cocaine he recovered for him following his (Moore's) arrest in August 2000, was crack cocaine. Mr.</u>*

5

> *Forte asserts that the cocaine was in powder form.* However, after listening to the taped conversation recorded on October 16, 2000 (see paragraph #13 above), and considering Mr. Forte's overall criminal history which includes multiple arrests/convictions for drug offenses which included crack cocaine, that Mr. Moore has no criminal history other than his conviction stemming from the charge indicated above, and that the government has no evidence that Mr. Moore has been misleading or untruthful in his testimony concerning his or Mr. Forte's role in the offense, <u>this officer asserts that there is sufficient evidence to reasonably determine and assume that the cocaine in question was, in fact, crack cocaine, and that Mr. Forte should be held accountable as indicated below.</u>
>
> 18. Since Mr. Forte received and sold both cocaine base and cocaine hydrochloride, the substances will be converted to their marijuana equivalent for guideline purposes. <u>Mr. Forte stated that when he weighed cocaine, one ounce represented 25 grams instead of 28.35 grams as used in laboratory analysis. The government has indicated that in order to be fair to Mr. Forte, they do not oppose the lower figure being used for guideline calculations.</u> **Therefore, one ounce will be equivalent to 25 grams.** In total (since January/February 2000) Mr. Forte is being held responsible for the following drug amounts:
>
>     **1) Cocaine Base (crack):**   January/February 2000   ........   1   ounce
>                                    August 2000             .........  18  ounces
>                                    December 4, 2000        .........  .45 ounces
>     _____
>     *Total:*                                                          19.45 ounces
>
>     ➡ 19.45 ounces (486.25 gm) of Cocaine Base (crack) **or <u>9,730 kg of marijuana.</u>**
>
>     **2) Cocaine Hydrochloride:**  April-August 2000   .........  2.5  kilograms
>                                    December 4, 2000    .........  236.3 gm
>     _____
>     *Total:*                                                      2,412 gm
>
>     ➡ 2,412 gm [2204.5 gm + 207.5 gm (2½ kg = 2,500 gm ÷28.35 = 88.18 oz · 25 = 2204.5 gm) + (236.3 gm ÷28.35 = 8.3 oz · 25 = 207.5 gm)] of cocaine hydrochloride **or <u>482.4 kg of marijuana.</u>**

PSR at 4-6 (emphasis in original).

Barrow did file an objection to the PSR concerning the inclusion of the January/February 2001 sale of one ounce of cocaine as relevant conduct, but he did not object to the PSR with respect to inclusion of the 18 ounces of crack. As a result of Barrow's challenge to the PSR, the probation officer prepared an addendum to the PSR and presented it to the district court at the sentencing proceedings. At the sentencing hearing, the district court heard testimony about the disputed date of sale and whether the ounce of cocaine was powder or crack. (Transcript of Judgment and Supervised Release Revocation Proceedings). The district court determined that the one ounce of cocaine should not be considered as relevant conduct, and thus determined Forte's criminal history score placed him in Category Five rather than Category Six for guideline purposes. (*Id.*)

The district court specifically stated during the sentencing proceedings that Forte was being held accountable for 18 ounces of crack cocaine, and neither Forte nor Barrow disputed this fact. (*Id.* at 18). In addition, Agent Paris Gillette with the ATF testified at the sentencing proceedings concerning the disputed ounce of cocaine, but no questions were raised regarding whether the 18 ounces of cocaine were crack as specified in the PSR. Forte also testified during the sentencing proceedings concerning the ounce of cocaine, but he did not address the 18 ounces of cocaine, and specifically said he had nothing further to say to the district court when given an opportunity to do so. (*Id.* at 14). After giving Forte the chance to address the court, the district court determined that the PSR, as amended regarding the ounce of cocaine, was accurate and the district court made the PSR part of the record. (*Id.* at 20-21).

In support of his § 2255 motion, Forte filed the unnotarized affidavit of Moore in which Moore allegedly states, among other things, that the 18 ounces of cocaine was in powder not crack form, and that he never indicated otherwise to law enforcement. (Motion for leave to file affidavit

7

with attached affidavit of Moore, Court File No. 11). Moore allegedly denies the references in the audio recordings concerning the 18 ounces of cocaine were references to crack and states that the distinction he drew in the taped conversation concerning the "little powder things" relates to powder cocaine that he had separated for personal use. (*Id.*). Moore also allegedly states he was not interviewed by Barrow or the probation officer who prepared the PSR. (*Id.*).

Pursuant to court order (Court File No. 15), the Government filed a response to Moore's unnotarized affidavit, attaching a notarized affidavit of Moore. (Response with attached affidavit of Moore, Court File No. 16). Moore states that the unnotarized affidavit filed by Forte is not an affidavit signed by Moore; that Moore signed a different affidavit presented by Forte, which Moore said was also incorrect and misleading, but he did so only because Moore thought it had no legal effect since it was not notarized and in an effort to stop Forte from bothering Moore; that Moore had told Forte on several occasions that Moore would not have talked to Forte's lawyer prior to Forte's sentencing based on advice of counsel received by Moore; that the 18 ounces of cocaine at issue was crack and that there was also a small amount of powder cocaine in the motel room; and that Moore previously had provided information about the 18 ounces of crack to Special Agent Cordell Malone ("Malone") and Assistant United States Attorney Gregg Sullivan as part of Moore's cooperation. (*Id.*).

Consistent with Moore's notarized affidavit that the 18 ounces of cocaine at issue was crack, Malone previously testified during the hearing on Forte's unsuccessful suppression motion as follows:

> Q  Now, when Mr. Moore approached you and he mentioned that Mr. Forte was talking to him about drug transactions. What did he tell you specifically?
> A  Basically , Mr. Moore, he was kind of upset because he said that Forte had beat him out of like 18 ounces of **crack** cocaine. . . .

8

(Suppression Hearing Transcript at 61 (emphasis added)). With respect to one of the taped conversations, Malone testified as follows:

> Q   Do you remember the context of any of those conversations?
> A   As I said before, they had talked about meeting Mr. Moore's source out of California. And then on one occasion, I think, maybe they talked about the 18 ounces was he ever going to pay him for the 18 ounces of **crack** that he got from him.

(*Id.* at 79). In its order denying the motion to suppress, the district court specifically noted that Forte took and sold "approximately 18 ounces of crack" from Moore's hotel room. (1:00-cr-164, Order denying motion to suppress). This finding of the district court was not raised as an issue on direct appeal.

If the district court had accepted that the 18 ounces of cocaine was powder, the guideline range for Forte's sentence would have been 120-150 months, not the 168-210 month range used to sentence Forte

### III. *Discussion*

None of Forte's criticisms of counsel relate to his plea. Instead, all of Forte's criticisms relate to sentencing. As the conviction is not in question, the only relief requested would be re-sentencing. As argued by Forte, the Government has not submitted an affidavit from Barrow explaining his lack of objection to the PSR concerning the form of the 18 ounces of cocaine included as relevant conduct. Instead, the Government argues that the failure of Forte's counsel to object was a strategic decision based on the strength of the evidence that the cocaine was crack and Forte's potential loss of acceptance of responsibility points. (Response to § 2255 motion, Court File No. 8). After filing the notarized affidavit of Moore, the Government also argued that Moore's notarized affidavit further supports its arguments that the § 2255 motion is meritless.

As noted above, after considering Forte's verbal objection to the PSR, the probation officer who prepared Forte's PSR determined the applicable sentencing guidelines range based on relevant conduct, including Forte's prior distribution of 18 ounces of crack cocaine. Forte could have raised whether the 18 ounces of cocaine was crack at the time of his suppression or sentencing hearings or on his direct appeal, but failed to do so. As the court of appeals has held: "[A] defendant cannot show that a PSR is inaccurate by simply denying the PSR's truth. Instead, beyond such a bare denial, he must produce some evidence that calls the reliability or correctness of the alleged facts into question." *United States v. Long*, 333 F.3d 678, 681 (6th Cir. 2003). Forte produced no such evidence, and therefore, Forte has waived the argument and cannot raise it for the first time on collateral review pursuant to § 2255 unless he can demonstrate that the alleged error constitutes a fundamental defect which inherently resulted in a complete miscarriage of justice. *Reed v. Farley,* 512 U.S. 339, 348 (1994); *Jones v. United States,* 178 F.3d 790, 796 (6th Cir. 1999); *Grant v. United States,* 72 F.3d 503, 505-06 (6th Cir. 1996).

Collateral post-conviction relief is not ordinarily available in a § 2255 proceeding for a claim of nonconstitutional, sentencing guideline error when that error is procedurally defaulted by the defendant's failure to raise it on direct appeal. *Jones v. United States,* 178 F.3d at 796; *Hunter v. United States,* 160 F.3d 1109, 1115 (6th Cir. 1998); *Grant,* 72 F.3d at 505-06. A motion for collateral post-conviction relief is not a substitute for a direct appeal and cannot do the service of an appeal. *Bousley v. United States,* 523 U.S. 614, 621 (1998); *United States v. Timmreck,* 441 U.S. 780, 784 (1979); *Grant,* 72 F.2d at 506; *United States v. Walsh,* 733 F.2d 31, 35 (6th Cir. 1984). Because Forte failed to raise any objection regarding the form of the 18 ounces of cocaine at sentencing or on direct appeal, he has waived the issue. *See Wirgau v. United States,* No. 96-1046,

10

1996 WL 729284 (6th Cir. Dec. 17, 1996). Moreover, Forte is not entitled to extraordinary relief under § 2255 because the Court's calculation and determination of Forte's sentence is not a fundamental defect resulting in a complete miscarriage of justice. *Wirgau,* 1996 WL 729284, at *1. Forte, however, attempts to avoid his waiver by alleging counsel was ineffective for failing to raise the issue during his sentencing proceedings.

Forte blames his failure to raise the issue of what type of cocaine was at issue on alleged ineffective assistance of counsel. After reviewing the record, I find that Forte has not established good cause to excuse his waiver since his claim of ineffective assistance of counsel is without merit. The two-prong *Strickland* test for ineffective assistance of counsel requires that Forte demonstrate two essential elements: (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable possibility that but for counsel's deficient performance the result of the proceedings would have been different. *Griffin v. United States,* 330 F.3d 733, 736 (6th Cir. 2003). A reasonable probability has been defined by the Supreme Court as a probability sufficient to undermine confidence in the outcome. *Strickland,* 466 U.S. at 694. Both prongs of the test must be met, but courts are not required to conduct an analysis under both. Thus, the court need not address the question of competence if it is easier to dispose of the claim due to the lack of prejudice or vice versa. *Strickland*, 466 U.S. at 697; *Baze v. Parker*, 371 F.3d 310, 321 (6th Cir. 2004), *cert. denied*, 125 S. Ct. 1670 (2005).

Convicted defendants, including defendants who have pleaded guilty, have a constitutional right of due process to a fair sentencing procedure that includes the right to be sentenced on the basis of accurate information. If a defendant can demonstrate false information formed a part of the basis for his sentence, then the sentence must be set aside or corrected. In order to obtain relief under

§ 2255, Forte is required to raise grave doubt about the veracity of the information and show the court relied on the false information in determining the sentence. *Ratcliff v. United States*, 999 F.2d 1023, 1028 (6th Cir 1993). Forte is not entitled to relief from his sentence on this ground because he has not raised grave doubts as to the veracity of the information or established that the district court relied on false information in determining his sentence. Forte's self-serving, after-the-fact assertions do not show the information relied upon by the district court in the earlier suppression hearing and again at sentencing was false. Forte has not demonstrated that any deficient performance has rendered his sentence unreliable.

Forte is attacking counsel's performance during the sentencing proceedings so he must demonstrate that counsel's performance was so deficient that the alleged deficient performance rendered his sentence unreliable. *Strickland,* 466 U.S. 687. This Forte cannot do. First, Forte's argument that the PSR somehow falsely indicates the probation officer spoke to Moore is misdirected. Paragraph 10 of the PSR makes it clear that the information contained in the PSR concerning Forte's offense was obtained from Forte, Malone, the AUSA, and the U.S. Probation Office–not directly from Moore. Forte himself raised the crack versus powder issue with the probation officer, who concluded, after investigation, that the form of the cocaine was crack based on the taped conversation between Moore and Forte, the information Moore provided to Malone, and the criminal history of Forte. (PSR ¶ 17).

Forte's next argument about the lack of proof regarding counsel's strategy is also meritless. The court's scrutiny of the reasonableness of counsel's performance is highly deferential. Counsel is strongly presumed to have rendered adequate legal assistance and to have made all decisions in the exercise of reasonable professional judgment and sound strategy. *Nix v. Whiteside,* 475 U.S.

12

157, 165 (1986); *Strickland,* 466 U.S. at 689-90; *O'Hara v. Wigginton,* 24 F.3d 823, 828 (6th Cir. 1994). Forte's argument that the Government assumed, but did not prove, his attorney's decisions were strategic fails in light of this presumption. Tactical choices regarding what issues to raise at sentencing are properly left to the sound judgment of counsel. Forte has not shown that the conduct of his attorney was deficient and fell below an objective standard of reasonableness. On the contrary, this Court finds that the conduct of Forte's attorney was objectively reasonable and competent under the circumstances.

In this § 2255 proceeding, Forte bears the burden of proving he is entitled to relief. *Owen v. United States,* 660 F.2d 696, 702 (6th Cir. 1981). Forte has not met this burden. If Forte's attorney had raised an objection to the PSR and argued in favor of applying the sentencing guidelines applicable to powder cocaine, any such argument would have been without merit and denied by the district court in the face of the strong evidence that it was crack and the district court's prior finding concerning 18 ounces of crack in the suppression hearing. Forte's claims about the meaning of the taped conversation and form of the 18 ounces of cocaine are not credible in the face of the record. Given the tape, the prior testimony of Malone concerning information he received from Moore, and the Court's finding as a result of the suppression hearing, Forte fails to show that his attorney's conduct in not challenging the form of the 18 ounces of cocaine listed as relevant conduct in the PSR was below accepted standards. Certainly, the submission of the conflicting affidavits of Moore does not lend support to Forte's claims. At the sentencing proceedings, if Forte failed to truthfully admit and falsely denied relevant conduct, the district court could have (and likely would have) determined that Forte had not clearly demonstrated acceptance of responsibility for his offense, and therefore would not have adjusted his offense level downward as recommended

13

in the PSR. Thus, Barrow was not ineffective for failing to raise the issue, especially since the result would have likely been an increase in Forte's sentence through the loss of his acceptance of responsibility points. Counsel's failure to object to information in the PSR where that information is amply supported is not ineffective assistance of counsel. *See Seymour v. Walker*, 224 F.3d 542, 556-57 (6th Cir. 2000); *United States v. Williams*, 176 F.3d 301, 312 (6th Cir. 1999) (stating in the face of the evidence, it was impossible to contend counsel's failure to object to certain information in the presentence report fell below the applicable standard under the first prong of *Strickland*); *Spearman v. Birkett*, No. 00-1669, 2001 WL 505941, at *1 (6th Cir. May 3, 2001) (holding defendant's claims lacked merit because he did not show he was actually prejudiced by counsel's failure to object to information in the presentence report).

While Forte himself questioned the form of the 18 ounces with the probation officer as reflected in the PSR, when given the opportunity to do so at the hearing, he did not. To permit collateral attacks on agreements to the drug-related relevant conduct made during sentencing hearings based on after-the-fact assertions that in the face of the record are wholly incredible would make every agreement subject to attack under § 2255 and render the oral responses given by a defendant in open court meaningless. *See Blackledge v. Allsion*, 431 U.S. 63, 73-74 (1977); *Warner v. United States*, 975 F.2d 1207, 1212-13 (6th Cir 1992).

To fairly assess an attorney's performance the court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. *Strickland,* 466 U.S. at 689. The court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under

14

the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana,* 350 U.S. 91, 101 (1955)). Counsel's tactical decisions are particularly difficult to attack. *O'Hara v. Wigginton,* 24 F.3d 823, 828 (6th Cir. 1994). A defendant's challenge to such decisions must overcome a presumption that the challenged actions might be considered sound strategy. *Id.* Making an independent judicial evaluation of counsel's performance to determine whether counsel acted reasonably under all the circumstances, *O'Hara,* 24 F.3d at 828; *Ward v. United States,* 995 F.2d 1317, 1321-22 (6th Cir. 1993), I find Barrow's decision not to object was well within the range of professionally reasonable judgment given the district court's suppression hearing decision, Malone's testimony, Forte's criminal history, and the taped conversation. That Barrow made the correct decision is certainly bolstered by the notarized affidavit submitted by Moore. The transcript of the sentencing hearing shows that, overall, Barrow provided Forte with a vigorous defense; he presented and prevailed on an objection to the one ounce of cocaine considered in the PSR, and reasonably chose not to pursue the issue of whether the 18 ounces of cocaine was crack given the evidence and circumstances. The failure of defense counsel to pursue frivolous motions and objections cannot constitute ineffective assistance of counsel. *United States v. Hanley*, 906 F.2d 1116, 1121 (6th Cir. 1990). In summary, Forte cannot satisfy the *Strickland* test. Accordingly, it is **RECOMMENDED** that Forte's § 2255 motion (Court File No. 1) be **DENIED AND DISMISSED WITH PREJUDICE.**

In addition, after review of this case pursuant to 28 U.S.C. § 1915(a)(3) and Rule 24 of the Federal Rules of Appellate Procedure, I **RECOMMEND** that the Court **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, I **RECOMMEND** any application by Forte for leave to proceed *in forma pauperis* on appeal be

**DENIED**. 28 U.S.C. § 1915(a)(3); Fed. R. Civ. P. 24. I further **RECOMMEND** that should Forte give timely notice of an appeal, such notice should be treated as an application for a certificate of appealability, which should be **DENIED** since he has failed to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Rule 22(b) of the Federal Rules of Appellate Procedure.

*IV.    Conclusion*

Accordingly, and as set forth more fully above, it is **RECOMMENDED**[1] that:

1). Forte's § 2255 motion (Court File No. 1) be **DENIED AND DISMISSED WITH PREJUDICE**;

2). Any application for leave to proceed *in forma pauperis* on appeal be **DENIED**; and

3). Should Forte give timely notice of an appeal, such notice be treated as an application for a certificate of appealability and **DENIED**.

> s/*Susan K. Lee*
> SUSAN K. LEE
> UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7, 106 S. Ct. 466, 472 n.7, 88 L. Ed. 2d 435 (1985). The district court need not provide de novo review where objections to this Report and Recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).